UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL R. FERLAND,                          Case No. 17-10368

        Plaintiff,                     Marc A. Goldsmith
  v.                                      United States District Judge

COMMISSIONER OF SOCIAL                      Stephanie Dawkins Davis
SECURITY,                                   United States Magistrate Judge

        Defendant.
_____/

**REPORT AND RECOMMENDATION**
**CROSS-MOTIONS FOR SUMMARY JUDGMENT (Dkt. 18, 20)**

## I.    PROCEDURAL HISTORY

### A.    Proceedings in this Court

On February 6, 2017, plaintiff, Richard Ferland, filed the instant suit.  (Dkt.

1).  Pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.1(b)(3), District Judge

Marc A. Goldsmith referred this matter to the undersigned for the purpose of

reviewing the Commissioner's unfavorable decision denying plaintiff's claim for a

period of disability and disability insurance benefits.  (Dkt. 2).  This matter is

before the Court on cross-motions for summary judgment.  (Dkt. 18, 20).

### B.    Administrative Proceedings

Plaintiff filed an application for a period of disability and disability

insurance benefits on April 8, 2014, alleging disability beginning on April 1, 2008.

(Tr. 12).[1]  The claims were initially disapproved by the Commissioner on June 28, 2014.  (*Id.*).  Plaintiff requested a hearing and on November 17, 2015, plaintiff appeared without counsel, before Administrative Law Judge (ALJ) Dawn M. Gruenberg, who considered the case *de novo*.  (Tr. 27-60).  In a decision dated December 9, 2015, the ALJ found that plaintiff was not disabled.  (Tr. 9-21). Plaintiff requested a review of this decision.  (Tr. 8).  The ALJ's decision became the final decision of the Commissioner when the Appeals Council, on December 13, 2016, denied plaintiff's request for review.  (Tr. 1-5); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004).

For the reasons set forth below, the undersigned **RECOMMENDS** that plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for summary judgment be **GRANTED** and that the findings of the Commissioner be **AFFIRMED**.

## II.    FACTUAL BACKGROUND

### A.    ALJ Findings

Plaintiff, born June 16, 1950, was 61 years old, which is defined as an individual of advanced age, on the date last insured (DLI).  (Tr. 19).  He has past relevant work as school residence officer, which falls into the light work category.

---

[1] The Administrative Record appears on the docket at entry number 12.  All references to the same are identified as "Tr."

(Tr. 19).  The ALJ applied the five-step disability analysis and found at step one that plaintiff had not engaged in substantial gainful activity since April 1, 2008 through the DLI of December 31, 2011.  (Tr. 14).  At step two, the ALJ found that plaintiff's chronic liver disease, hepatitis C, affective disorder, alcohol abuse, and anemia were "severe" within the meaning of the second sequential step.  (Tr. 14). At step three, the ALJ found no evidence that plaintiff's impairments singly or in combination met or medically equaled one of the listings in the regulations.  (Tr. 15-17).  The ALJ found that plaintiff had the following residual functional capacity:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except avoid even moderate exposure to hazards in the work place; never climb ladders, or work where stairs must be climbed for ingress or egress to job location.

(Tr. 17).  At step four, the ALJ denied plaintiff benefits because she found that plaintiff was capable of performing his past relevant work as a school residence officer.  (Tr. 19).  The ALJ made an alternative step five finding that plaintiff could perform other jobs available in the national economy, based on vocational expert testimony.  (Tr. 20).  Accordingly, the ALJ concluded that plaintiff was not disabled at any time before the expiration of the DLI.  (Tr. 21).

## III.   DISCUSSION

### A.   <u>Standard of Review</u>

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims, and the judiciary merely reviews the agency determination for exceeding statutory authority or for being arbitrary and capricious.  *Sullivan v. Zebley*, 493 U.S. 521 (1990).  The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council.  *Bowen v. Yuckert*, 482 U.S. 137 (1987).  If relief is not found during this administrative review process, the claimant may file an action in federal district court.  *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir.1986).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g).  Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record."  *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).  In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v.*

*McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant."  *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.").  "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'"  *Rogers*, 486 F.3d at 247, quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4.

If supported by substantial evidence, the Commissioner's findings of fact are conclusive.  42 U.S.C. § 405(g).  Therefore, this Court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion."  *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*).  Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Rogers*, 486

F.3d at 241; *Jones*, 336 F.3d at 475.  "The substantial evidence standard

presupposes that there is a 'zone of choice' within which the Commissioner may

proceed without interference from the courts."  *Felisky v. Bowen*, 35 F.3d 1027,

1035 (6th Cir. 1994) (citations omitted), citing, *Mullen*, 800 F.2d at 545.

    The scope of this Court's review is limited to an examination of the record

only.  *Bass*, 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir.

2001).  When reviewing the Commissioner's factual findings for substantial

evidence, a reviewing court must consider the evidence in the record as a whole,

including that evidence which might subtract from its weight.  *Wyatt v. Sec'y of*

*Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992).  "Both the court of

appeals and the district court may look to any evidence in the record, regardless of

whether it has been cited by the Appeals Council."  *Heston v. Comm'r of Soc. Sec.*,

245 F.3d 528, 535 (6th Cir. 2001).  There is no requirement, however, that either

the ALJ or the reviewing court must discuss every piece of evidence in the

administrative record.  *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508

(6th Cir. 2006) ("[a]n ALJ can consider all the evidence without directly

addressing in his written decision every piece of evidence submitted by a party.")

(internal citation marks omitted); *see also Van Der Maas v. Comm'r of Soc. Sec.*,

198 Fed. Appx. 521, 526 (6th Cir. 2006).

B.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits."

*Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994);

*accord*, *Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. Appx. 515, 524 (6th Cir. 2003).

There are several benefits programs under the Act, including the Disability

Insurance Benefits Program of Title II (42 U.S.C. §§ 401 *et seq*.) and the

Supplemental Security Income Program of Title XVI (42 U.S.C. §§ 1381 *et seq*.).

Title II benefits are available to qualifying wage earners who become disabled

prior to the expiration of their insured status; Title XVI benefits are available to

poverty stricken adults and children who become disabled.  F. Bloch, Federal

Disability Law and Practice § 1.1 (1984).  While the two programs have different

eligibility requirements, "DIB and SSI are available only for those who have a

'disability.'"  *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007).  "Disability"

means:

> inability to engage in any substantial gainful activity by
> reason of any medically determinable physical or mental
> impairment which can be expected to result in death or
> which has lasted or can be expected to last for a
> continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a)

(SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments, that "significantly limits ... physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*Carpenter v. Comm'r of Soc. Sec.*, 2008 WL 4793424 (E.D. Mich. 2008), citing, 20 C.F.R. §§ 404.1520, 416.920; *Heston*, 245 F.3d at 534.  "If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates."  *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, cited with approval in *Cruse*, 502 F.3d at 540.  If the analysis reaches the fifth step without a finding rejecting the existence of disability, the burden transfers to the Commissioner.  *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006).  At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given [his] RFC and considering relevant vocational factors." *Rogers*, 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v) and (g).

If the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if the court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545.  In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

C.    Analysis and Conclusions

1.    Listings

As previously noted, if a claimant does not have current substantial gainful employment and suffers from a qualifying severe impairment, the ALJ must assess whether the claimant satisfies a listed impairment. *Sheeks v. Comm'r of Soc. Sec.*,

544 Fed. Appx. 639, 641 (6th Cir. 2013); 20 C.F.R. § 416.920(a)(4)(iii).  If a

claimant's impairments meet or equal a listed condition, the ALJ must find him

disabled.  *Id*.  When considering presumptive disability at Step Three, an ALJ must

analyze the claimant's impairments in relation to the Listed Impairments and must

give a reasoned explanation for his findings and conclusions in order to facilitate

meaningful review.  *Hoffmeyer v. Comm'r. of Soc. Sec.*, 2015 WL 12670493, at

*10 (E.D. Mich. Aug. 17, 2015), report and recommendation adopted sub nom.

*Hoffmeyer v. Colvin*, 2015 WL 6735337 (E.D. Mich. Nov. 4, 2015) (citing

*Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. Appx. 411, 416 (6th Cir. 2011)).  An

ALJ's failure to sufficiently articulate his Step Three findings is error.  *See id*.

(citing *M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp.2d 846, 858-59 (E.D. Mich.

2012)); *see also Reynolds*, 424 Fed. Appx. at 416; *Tapp v. Astrue*, 2011 WL

4565790, at *5 (E.D. Ky. 2012) (discussing reversal in a series of cases where the

ALJ "made only a blanket statement that the claimant did not meet or equal a

Listing section").

The requisite explanation and support need not be located entirely within the

section of the ALJ's decision devoted specifically to step three; courts have

endorsed the practice of searching the ALJ's entire decision for statements

supporting his step three analysis."  *Staggs v. Astrue*, 2011 WL 3444014, at *3

(M.D. Tenn. Aug. 8, 2011); *see also Smith v. Comm'r of Soc. Sec.*, 2012 WL

10

4897364, at *6 (E.D. Mich. Sept.14, 2012). Moreover, this court will not overturn

an ALJ's decision if the failure to articulate Step Three findings was harmless. *See*

*M.G*, 861 F.Supp.2d at 859. Such an error is harmless where "concrete factual and

medical evidence is apparent in the record and shows that even if the ALJ had

made the required findings, the ALJ would have found the claimant not

disabled...." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D.

Tenn. Mar. 1, 2010)). Thus, remand is not required where the evidence makes

clear that even if he "had made the required findings, [he] would have found the

claimant not disabled." *Id.*; *see Hoffmeyer*, 2015 WL 12670493, at *10 (To show

that an impairment matches a Listing, the claimant must show that his or her

impairments meet all of the specified criteria). Conversely, remand is appropriate

in cases where the court's review of the ALJ's decision and the record evidence

leaves open the possibility that a listing is met. *Hoffmeyer*, 2015 WL 12670493, at

*10 (citing *Reynolds*, 424 Fed. Appx. at 416 ("in this case, correction of such an

error is not merely a formalistic matter of procedure, for it is possible that the

evidence [the plaintiff] put forth could meet this listing")).

   Plaintiff submits that his physical impairment, involving his chronic liver

disease, meets and/or at least equals Listing 5.05A, Chronic Liver Disease, with

> Hemorrhaging from esophageal, gastric, or ectopic
> varices or from portal hypertensive gastropathy,
> demonstrated by endoscopy, x-ray, or other appropriate
> medically acceptable imaging, resulting in hemodynamic

> instability as defined in 5.00D5, and requiring
> hospitalization for transfusion of at least 2 units of blood.
> Consider under a disability for 1 year following the last
> documented transfusion; thereafter, evaluate the residual
> impairment(s).

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 5.05 (version effective 8/12/15-

5/23/16).  Section 5.00D5, referred to above, provides:

> Gastrointestinal hemorrhage (5.02 and 5.05A).
> Gastrointestinal hemorrhaging can result in hematemesis
> (vomiting of blood), melena (tarry stools), or
> hematochezia (bloody stools). Under 5.02, the required
> transfusions of at least 2 units of blood must be at least
> 30 days apart and occur at least three times during a
> consecutive 6–month period. Under 5.05A,
> hemodynamic instability is diagnosed with signs such as
> pallor (pale skin), diaphoresis (profuse perspiration),
> rapid pulse, low blood pressure, postural hypotension
> (pronounced fall in blood pressure when arising to an
> upright position from lying down) or syncope (fainting).
> Hemorrhaging that results in hemodynamic instability is
> potentially life-threatening and therefore requires
> hospitalization for transfusion and supportive care. Under
> 5.05A, we require only one hospitalization for
> transfusion of at least 2 units of blood.

20 C.F.R. Part 404, Appendix 1, Subpart P § 5.00D5 (version effective 8/12/15-

5/23/16).  Listing 5.05 "contains highly technical requirements based on objective

medical measurements." *Coble v. Colvin*, 2013 WL 4597149, at *4 (4th Cir. Aug.

29, 2013).  The ALJ's Listing analysis was as follows:

> Although the claimant has the severe impairments listed
> above, the impairments, or combination of impairments,
> do not meet or medically equal the specific criteria of
> 5.00 Digestive Systems, 7.00 Hematological Disorders,

> 12.00 Mental Disorders, or any impairment listed in
> Appendix I, Subpart P, Regulations No. 4. The medical
> opinion of the State agency and consultative physicians,
> all of whom considered the relevant Listings, support this
> finding.

(Tr. 15).  While the ALJ's Listing analysis continued as to plaintiff's mental

impairments, she provided no further analysis regarding plaintiff's physical

impairments.

Plaintiff maintains that the ALJ's analysis under Listing 5.05(A) was

insufficient, citing *Stachura v. Comm'r of Soc. Sec.*, 2015 WL 87362 (E.D. Mich.

2015).  In support of his argument, plaintiff points to evidence from a hospital visit

in June 2010, which is the only pre-DLI medical treatment in this record:

- Plaintiff was admitted to the Emergency Room of St. John Hospital and

  Medical Center secondary to "increased edema,"1 dyspnea on exertion," and

  "was found to have platelets of 24,000."  "Normal" platelet counts range

  from 150-450 billion/L (150,000 to 450,000/mcL).  (Tr. 186).

- Plaintiff received a "platelet transfusion," initially, and the level "started to

  improve; however, platelets went up to as high as around 34,000," and then

  "back down to 24,000 …"  (Tr. 186).

- Plaintiff underwent a bone marrow biopsy due to the failure of his platelet

  count increasing. Per a doctor's interpretation, it was felt that there was

  adequate cellularity with "close follow up" being advised.  (Tr. 186).

- While in the hospital, plaintiff described having "intermittent episodes of significant rectal bleeding," which he described as being related to hemorrhoids.  He stated that that had been "going on for the last about two years." Daniel also noted that he had "easy bruising." He had "2+ swelling in both lower extremities."  (Tr. 194).

- Plaintiff had a CT scan of the abdomen/pelvis due to the swelling in his lower extremities which revealed a "slightly enlarged liver" which was found to be "compatible with fatty infiltration." He also had "colonic diverticulosis."  (Tr. 214).

- Degenerative changes and disc narrowings with vacuum phenomena … present throughout the slightly scoliotic lumbosacral spine and to a lesser degree in the visualized lower thoracic spine.  (Tr. 214).

- An ultrasound of the abdomen revealed "The appearance of the slightly enlarged liver could reflect changes related to fatty infiltration, hepatocellular disease, or a combination of both.  (Tr. 217).

- Pathology reports from peripheral blood, bone marrow aspirate and core biopsy revealed, inter alia, that the "findings" were "consistent with peripheral destruction of platelets."  (Tr. 209).

- In a consultation note, Harivallabh Pandya, M.D., noted, as his final "impression," that Daniel had "significant thrombocytopenia and anemia

with a history of increased alcohol intake and a history of hepatitis C." (Tr.

195).

- The final diagnosis from the June 2010 admission included

    thrombocytopenia; alcohol use; hypertension; hemochromatosis;" and

    "neuropathic pain." (Tr. 186).

In the view of the undersigned, "even if the ALJ had performed a proper,

rigorous step three analysis, the evidence marshaled by Plaintiff could not have led

the ALJ to conclude that the criteria of Listing [5.05A] were met." *Day v. Comm'r*

*of Soc. Sec.*, 2017 WL 4960178, at *4 (E.D. Mich. Sept. 28, 2017). Indeed, even

though the ALJ's analysis as to Listing 5.05A is not fully fleshed out, the

undersigned concludes that any error in articulation was harmless because there is

a dearth of medical evidence even suggesting that plaintiff could have satisfied all

the criteria of Listing 5.05A before the DLI expired. While plaintiff also points to

post-DLI medical evidence, this evidence does not suggest that plaintiff met the

requirements of the Listing before the DLI, which is the relevant inquiry. For

example, plaintiff points out that in May 2012, five months after his DLI, he

underwent an esophagogastroduodenoscopy with esophageal varices banding x2,

which was required due to "acute upper GI bleeding." (Tr. 242). However,

plaintiff does not explain how this evidence shows that he met the Listing

requirements <u>before</u> the DLI. Indeed, this record "contains no evidence of

hemorrhaging from these varices or from portal hypertensive gastropathy, as required to satisfy paragraph A" before the DLI.  *See Markulin v. Comm'r of Soc. Sec.*, 2015 WL 6121899 (D. N.J. 2015).  Moreover, even if the court concludes from this record that plaintiff had a transfusion of at least two units of blood[2] during his 2010 hospitalization, plaintiff does not offer evidence that he required such a transfusion <u>as a result</u> of hemorrhaging from esophageal, gastric, or ectopic varices demonstrated by endoscopy and which resulted in hemodynamic instability, as required by the Listing.  *See e.g.*, *Morgan v. Colvin*, 2016 WL 1161912 *10 (N.D. Tex. Mar. 24, 2016) (The plaintiff "cites instances in the record where he underwent transfusions of at least two units of blood, but he cannot show that hemorrhaging from esophageal varices demonstrated by endoscopy resulted in hemodynamic instability which required these hospitalizations for transfusion of at least two units of blood.").  And, as the Commissioner correctly points out, plaintiff identifies no "appropriate medically acceptable imaging" demonstrating the medical requirements of listing 5.05(A) before the DLI.  20 C.F.R. Pt. 404, Subpt. P, Appx. 1, § 5.05A; (Tr. 186-218).

---

[2]  The Commissioner contends that plaintiff did not receive two "units of blood" because he received a total of 431 mL of platelets, albeit in two "units," one totaling 228 ml and one totaling 203 ml. (Tr. 207).  The Commissioner says a "unit of blood" is 450-500 ml, based on information from www.medicaldictionary.com.  (Dkt. 20, p. 7, n. 3).  However, the Commissioner has provided no authority explaining or verifying that a "unit of blood" is different from a "unit of platelets" or that a "unit of blood" must have a particular minimum volume.  In any event, the undersigned concludes that it does not matter because plaintiff has not otherwise shown that he met all the criteria for Listing 5.05A prior to the expiration of his DLI.

Rather, plaintiff's medical records from the June 2010 hospitalization show that there were "no signs of gross bleeding at this time."  (Tr. 189).  And, Dr. Vincent Maribao stated that plaintiff received the transfusion because of his "history of bleeding as well as bruises."  (Tr. 195).  Plaintiff mentions his "intermittent episodes" of significant rectal bleeding related to hemorrhoids, but does not explain how this evidence shows he satisfied the Listing.  (Tr. 194).

Plaintiff also does not marshal evidence suggesting that he met the Listing after the DLI.[3]  And, even if he had done so, plaintiff does not offer any analysis suggesting that it would be proper for the Court (or the ALJ) to extrapolate such a finding to plaintiff's condition before the DLI in the circumstances of this case. *See e.g.*, *Carter v. Comm'r of Soc. Sec.*, 2013 WL 3940874, *9 (N.D. Ohio July 30, 2013) (In the Sixth Circuit, post-DLI evidence which is "both relevant and

---

[3] The undersigned agrees with the Commissioner's observation that plaintiff's reliance, throughout his brief, on generic descriptions of his medical conditions and symptoms from commonly sourced medical websites is not evidence, and does not assist his effort to carry his step-three burden.  While "Courts routinely take judicial notice of medical websites such as the NIH for definitional purposes," *McLaren-Knipfer v. ArvinMeritor, Inc.*, 876 F. Supp. 2d 913, 921 (E.D. Ky. 2012), the court should decline any invitation to diagnose or evaluate the medical evidence in the record, thereby succumbing to the temptation to play doctor.  *Alexander v. Comm'r of Soc. Sec.*, 2018 WL 2187996, at *5 (E.D. Mich. Apr. 24, 2018), report and recommendation adopted sub nom. *Alexander v. Soc. Sec., Comm'r of*, 2018 WL 2184354 (E.D. Mich. May 11, 2018) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).  And, a diagnosis, standing alone, cannot demonstrate that plaintiff's impairments met or medically equaled a listing.  *See* 20 C.F.R. § 404.1525(d); *Haws v. Berryhill*, 2018 WL 2697432, at *4 (W.D. Ky. June 5, 2018) ("To meet a listing in Appendix 1, the medical records regarding the impairment must satisfy both the diagnosis and severity requirements for the listing.") (citing Social Security Ruling 96-5p).

reasonably proximate in time to a pre-DLI condition" may be considered by the ALJ in determining whether a claimant met a listing prior to her DLI, but there is no error where the plaintiff failed to demonstrate "either that the ALJ failed to consider post-DLI evidence, or that such evidence establishes that she met the requirements for [the] Listing...").  Based on the foregoing, the undersigned concludes that any step three error regarding the ALJ's Listing analysis is entirely harmless because the "concrete factual and medical evidence apparent in the record" would have led the ALJ to conclude that the criteria of the relevant listings were not met.  *See M.G.*, 861 F.Supp.2d at 861; *see also Forrest v. Comm'r of Soc. Sec.*, 591 Fed. Appx. 359, 366 (6th Cir. 2014) (Any error in the ALJ's step-three findings "is harmless, because Forrest has not shown that his impairments met or medically equaled in severity any listed impairment between October 2006 and July 2011.").

Plaintiff also argues that the ALJ's analysis generally suggests that she did not fully consider the 2010 medical records in reaching her decision.  Plaintiff asserts that, given the lack of consideration of the pre-DLI evidence, there is question as to whether plaintiff's condition possibly equaled the Listing and thus, a medical expert should have been present at the hearing to assist the ALJ.  *See Sheeks v. Comm'r of Soc. Sec.*, WL 753205 (E.D. Mich. 2015) (The ALJ must consider an expert's opinion on the issue of equivalence).

The undersigned agrees with the Commissioner that plaintiff has simply failed to carry his step-three burden on the equivalence issue.  Just as with his attempt to show he meets Listing 5.05A, plaintiff makes no effort to demonstrate how any of the evidence he identifies shows that he that medically equaled the specific criteria of Listing 5.05A prior to his date last insured.  Plaintiff's argument also ignores the fact that the state agency physician who reviewed plaintiff's medical records, both pre- and post-DLI, expressly concluded that plaintiff's impairments did not meet or equal any listed impairment.  (Tr. 65-68).  While Dr. Milagros Flores, the state agency physician, did not expressly consider Listing 5.05A, he concluded that plaintiff's liver disease was non-severe, which, as the Commissioner suggests, means he necessarily concluded that it did not meet or equal this Listing.  Moreover, the ALJ expressly noted that the State agency opinion supported her finding that plaintiff's impairments did not meet or medically equal a listing.  (Tr. 15); *contra*, *e.g.*, *Hoffmeyer v. Comm'r of Soc. Sec.*, 2015 WL 12670493, at *5 (E.D. Mich. Aug. 17, 2015) (noting ALJ did not indicate any reliance on State agency opinions to inform the step-three analysis).

Even if it were an error to rely on Dr. Flores' equivalency opinion because he did not expressly consider Listing 5.05A, the undersigned suggests that it was harmless.  *See Lusk v. Comm'r of Soc. Sec.*, 106 Fed. Appx. 405, 411 (6th Cir. 2004) (to show equivalence, the plaintiff must "present medical evidence that

describes how his impairment is equivalent to a listed impairment"); *Bondy v. Comm'r of Soc. Sec.*, 2015 WL 1530435, at *20 (E.D. Mich. Mar. 31, 2015) (Murphy, J.); *Buchanon v. Comm'r of Soc. Sec.,* 2015 WL 927831, at *6-7 (E.D. Mich. Mar. 4, 2015) (Steeh, J.).  Although courts in this district generally remand when the record contains "no equivalence opinion whatsoever," they also acknowledge that "the lack of a medical opinion on equivalence can be deemed harmless error in some cases."  *Bukowski v. Comm'r of Soc. Sec.*, 2014 WL 4823861, at *6 (E.D. Mich. Sept. 26, 2014) (Michelson, J.); *see also Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 655-58 (6th Cir. 2009) (applying harmless-error analysis in context of ALJ's step-three findings).  Here, as discussed in detail above, the pre-DLI evidence simply does not demonstrate the possibility that plaintiff could meet or equal the criteria of a Listing 5.05A.  *See Rice v. Comm'r of Soc. Sec.*, 2017 WL 4925681, at *3 (E.D. Mich. Aug. 25, 2017), report and recommendation adopted, 2017 WL 4129535 (E.D. Mich. Sept. 19, 2017) (Cohn, J.).  The regulations specify that, at the hearing level, the ALJ is ultimately responsible for deciding medical equivalence.  20 C.F.R. § 416.926(e).   To show that the error was not harmless, plaintiff would need to come forward with some evidence to suggest that there was a reasonable possibility of a finding of equivalence.  *Brown v. Comm'r of Soc. Sec.*, 2014 WL 222760, at *13 (E.D. Mich. Jan. 21, 2014) (Drain, J.) (The lack of an expert opinion on whether the claimant's

physical impairments medically equal any listed impairment is clear error and requires remand where the record is not so lacking in medical findings that a finding of equivalence is implausible.).  Unlike in the plaintiff in *Brown*, plaintiff has not shown that a finding of equivalence is plausible here.  Under these circumstances, where the available medical evidence before the DLI reveals nothing even close to meeting the Listing and where there is an opinion (albeit an incomplete opinion) on equivalence, any step three error was harmless.

##### 2.      Development of the Record

Although plaintiff bears the burden of establishing that he is entitled to disability benefits, courts have recognized that "[s]ocial security proceedings, unlike judicial ones, are inquisitorial, not adversarial." *Wright-Hines v. Comm'r of Soc. Sec*, 597 F.3d 392, 397 (6th Cir. 2010) (citing *Sims v. Apfel,* 530 U.S. 103, 110–11 (2000) (plurality)).  "Consequently, the ALJ has a 'duty to investigate the facts and develop the arguments both for and against granting benefits.'"  *Id.* at 111 (citing *Richardson v. Perales,* 402 U.S. 389, 400-401 (1971)).  Where the claimant is without counsel, incapable of presenting an effective case, and unfamiliar with hearing procedures, the ALJ has a "special, heightened duty" to develop the administrative record and ensure a fair hearing.  *See Wilson v. Comm'r of Soc. Sec.*, 280 Fed. Appx. 456, 459 (6th Cir. 2008) (citing *Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051-52 (6th Cir. 1983)).  To satisfy this

duty, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts," and must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Lashley*, 708 F.2d at 1052 (internal citations omitted).

Whether an ALJ satisfied his "special, heightened duty" to develop the record is determined on a case-by-case basis. *See Osburn v. Apfel*, 1999 WL 503528, at *7 (6th Cir. July 9, 1999) (internal citation omitted). Failure by an ALJ to fully develop the factual record in a particular matter is often evidenced by superficial or perfunctory questioning, as well as a failure to obtain all available medical records and documentation. *See Lashley*, 708 F.2d at 1052. However, "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence." *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) (citation omitted).

Plaintiff acknowledges that he was unrepresented, by his own choice. However, he says that a review of the hearing transcript reveals that neither he, nor his wife, really understood that they had to "prove" their case with regard to plaintiff's condition prior to his DLI. According to plaintiff, it is unclear from the transcript whether he and his wife actually understood the concept of "date last insured," given that on occasion he and his wife would describe conditions and

symptoms that were post DLI, clearly thinking that they were describing

something that would be useful for the ALJ to hear.  Had they been represented,

plaintiff says they would have focused their attention on plaintiff's condition prior

to December 2011.

In response, the Commissioner points out that plaintiff concedes that not

being represented was his choice, after the ALJ counseled him on his right to

obtain representation.  (Tr. 30-31; Pl.'s Br. 15).  The ALJ even asked plaintiff if he

discussed his decision not to obtain counsel with anyone else, and he

acknowledged that he conferred with his wife, who agreed with his decision to

proceed without counsel.  (Tr. 31).  Accordingly, plaintiff signed a Waiver of

Right to Representation.  (Tr. 110).  The Commissioner contends that the mere fact

that plaintiff was not represented at the administrative hearing—

standing alone—does not trigger an ALJ's "heightened duty" to develop the

record.  *See Wilson v. Comm'r of Soc. Sec*., 280 Fed. Appx. 465, 459 (6th Cir.

2008).  Rather, the Sixth Circuit has held that "special circumstances" must be

present to trigger the "heightened duty," including that the claimant is "(1) without

counsel, (2) incapable of presenting an effective case, and (3) unfamiliar with

hearing procedures[.]"  *Id.* (citing *Lashley v. Sec'y of Health and Human Servs.*,

708 F.2d 1048, 1051-52 (6th Cir. 1983)).  According to the Commissioner,

plaintiff has failed to present evidence that he was incapable of presenting an

effective case or that he was unfamiliar with hearing procedures.  Notably, in the

context in which the Sixth Circuit developed this criterion, the claimant was "a 79

year-old with a fifth grade education, who after suffering two strokes had trouble

reading, writing, and reasoning." *Wilson*, 280 Fed. Appx. at 459 (citing *Lashley*,

708 F.2d at 1049).  Far from the claimant in *Lashley*, the Commissioner argues that

plaintiff has made no showing that his age or medical conditions precluded his

ability to present an effective case.  Rather, plaintiff testified cogently in response

to the ALJ's questions, and he had the forethought to bring a witness (his wife) to

the hearing, who also offered cogent testimony.  (Tr. 37-55).  Therefore, the

Commissioner maintains that there is no evidence to suggest that plaintiff was

incapable of presenting an effective case.

In the view of the undersigned, this is a case where, although proceeding *pro*

*se*, no other special circumstances exist that counsel a heightened duty.  *Nabours v.*

*Comm'r of Soc. Sec.*, 50 Fed. Appx. 272, 275-76 (6th Cir. 2002) (holding that

where the claimant "was able to put on her case with no discernable problems,"

was articulate in giving testimony, and there were no signs that the claimant's lack

of representation was taken advantage of, the ALJ was not under a heightened duty

to develop the record under *Lashley*); *Wilson v. Comm'r*, 280 Fed. Appx. 456, 459-

60 (6th Cir. May 29, 2008) (finding that the ALJ adequately questioned the

claimant on work limitations and did not need to inquire further when the claimant

failed to tell the ALJ about certain mental or psychological limitations).  The undersigned agrees with the Commissioner's observation that plaintiff, like nearly all Social Security claimants, was undoubtedly not well versed in hearing procedures, but that there is nothing in the transcript to demonstrate that his "grasp of the proceedings" was so insufficient so as to require the ALJ to further develop the record.  *See Wilson*, 280 Fed. Appx. at 459.  Rather, the hearing transcript demonstrates that the ALJ repeatedly emphasized the importance of plaintiff offering testimony of his condition prior to his date last insured.  (Tr. 35-36, 41-42, 48-49, 52, 54).

Plaintiff also says that he indicated he had been unable to obtain records from St. John Hospital for any period between April 2008 and June 2010, telling the ALJ that those "records were unattainable to me from St. John's as well," as though someone else had possibly tried to obtain those on his behalf by Social Security.  (Tr. 36).  Given the "special duty" imposed on an ALJ, plaintiff contends that perhaps there should have been an offer, by the ALJ, to attempt to get prior records on behalf of plaintiff, if they existed.

The undersigned agrees with the Commissioner that there is no merit to plaintiff's contention that the ALJ failed to make efforts to obtain medical records is without merit.  The ALJ acknowledged that the medical evidence did not begin until June 2010.  (Tr. 14, 18).  And the ALJ expressly questioned both plaintiff and

his wife on this fact.  (Tr. 35-36, 41).  While plaintiff asserted he was unable to

obtain records from St. John's Hospital from 2008 through June 2010 (Tr. 36), the

Commissioner says that the reason for that was evidently that no such records

exist.  (Tr. 194) (Noting in 2010, "He generally does not see any physician.  Last

time he saw his attending physician was about 5 years ago.").  This theory is borne

out by the hearing testimony confirming that plaintiff rarely, if ever, sought

medical treatment until June 2010.  For example:

- Plaintiff testified he was diagnosed with thrombocytopenia in 2008, but
  admits he did not seek treatment until his hospital admission in 2012 (Tr.
  39–40);

- Plaintiff's wife testified he did not start seeing a doctor regularly until "right
  around" the end of 2012 (Tr. 41–42);

- Plaintiff testified that he had "extreme fatigue" in 2008, which he treated
  with over the counter, non-prescription sleep aids (Tr. 47);

- Plaintiff treated with an eye doctor since 1999, but his only treatment during
  the relevant period was to prescribe eyeglasses (Tr. 49);

- Plaintiff testified that he experienced episodic back pain starting in 2008, but
  did not seek medical treatment for this condition. He further testified he was
  "living with the pain" (Tr. 50);

- When asked, "When did you start going to the doctor about the pain if you ever have?" Plaintiff's wife replied on his behalf, "It was either 2011 or 2012" when Plaintiff was admitted to St. John's Hospital (Tr. 51).

Based on the foregoing, it is evident from testimony from plaintiff and his wife demonstrate that he failed to seek medical treatment until his admission to St. John's Hospital in June 2010.  (Tr. 194).  Although an ALJ has the affirmative duty to develop the factual record, the ALJ need not "seek out a physician's medical opinion where one is not offered[,]" and where, as here, it appears none exists. *See Brown v. Comm'r of Soc. Sec*., 602 Fed. Appx. 328, 331 (6th Cir. 2015).  And, if additional medical evidence actually existed, presumably plaintiff's counsel would have located it before plaintiff filed his motion for summary judgment in this case and moved for remand under Sentence Six.  There is simply no substantial basis to conclude, on this record, that the ALJ could have reasonably believed that additional medical records existed; and as a consequence, the undersigned finds no reasonable basis to believe that the ALJ was required to undertake any further efforts to locate such records.

Next, plaintiff argues that it is apparent that he did not know to prepare" for the questioning of a vocational expert, if he even knew that there was going to be such an individual at the hearing.  After the ALJ asked the VE questions, plaintiff had no questions, and is now saying that he was possibly "lulled" into thinking that

27

the vocational expert was giving the final conclusion that there was "no competitive full time employment" available based on the last hypothetical given by the ALJ.  Had he been represented, and/or had he known that he should be represented, plaintiff contends that he would have understood that the vocational expert's testimony is not necessarily followed by an ALJ, and that the final decision depends on which hypothetical answer the ALJ finds most in line with his/her conclusions.  In particular, there was questioning by the ALJ to the vocational expert as follows:

> ALJ: If we add to the hypothetical that the individual …
> is unable to climb stairs or ladders except - - never
> ladders. …stairs only for ingress or egress to a job
> location. Is the past work available?
>
> VE: Yes, Your Honor.

(Tr. 57).  Had plaintiff realized the importance of that answer, he now says he would have asked the vocational expert whether his past relevant work would be precluded, given his description of his past relevant work which included "climbing" a total of .5 hours per day.  (Tr. 136).  According to plaintiff, given that the question was not asked, it resulted in the ALJ finding that Daniel was "capable of performing his past relevant work as a residence officer, schools," when, in fact, climbing was a part of that job.  (Tr. 19).

The Commissioner also contends that plaintiff's argument is based purely on his attorney's speculation that he was "lulled" into a false understanding of the

relevance of that testimony.  According to the Commissioner, nothing in the record

supports that speculation.  Rather, plaintiff simply declined to question the

vocational expert without any suggestion that he did not understand his right to do

so.  (Tr. 59).  Moreover, the Commissioner asserts that the point is irrelevant on

this record because the vocational expert testified that plaintiff could perform his

past relevant work.  (Tr.56-58).  Thus, the vocational expert's testimony

concerning other jobs plaintiff could have performed did not inform the ALJ's

ultimate step-four determination that plaintiff was not disabled.  The

Commissioner also contends that plaintiff's argument about "climbing" misses the

mark.  Notwithstanding plaintiff's notation on his disability report (Tr. 136), the

Dictionary of Occupational Titles (DOT) reflects that plaintiff's past work does not

require climbing.  *See* DOT § 168.367-010, 1991 WL 647414 (1991).  The issue at

step four is whether plaintiff can return to his past relevant work "either as

[Plaintiff] actually performed it or as generally performed in the national

economy."  20 C.F.R. §§ 404.1520(f), 404.1560(b)(2).  Thus, because the DOT

reflects that plaintiff past relevant work does not require climbing, plaintiff could

perform his past relevant work as it was generally performed in the national

economy.

Plaintiff's argument is without merit.  As explained in *Shular v. Berryhill*,

2018 WL 3377332, at *7 (E.D. Tenn. July 11, 2018), Social Security Ruling 82-61,

provides "if the claimant cannot perform the excessive functional demands and/or job duties actually required in the former job but can perform the functional demands and job duties as generally required by employers throughout the economy, the claimant should be found to be 'not disabled.'" 1982 WL 31387, *2 (Jan. 1, 1982). Thus, the Commissioner is correct that the ALJ properly relied on the VE's testimony, which supports her conclusion that plaintiff can perform his past work as a school resident officer as it is generally performed in the national economy. Plaintiff has not set forth any evidence that he cannot perform the "job duties as generally required by employers throughout the economy." *See id*. Therefore, just as in *Shular* because the hypothetical question presented to the VE accurately represented plaintiff's RFC, substantial evidence supports the ALJ's step four finding that Plaintiff has past relevant work. *See Smith v. Halter*, 307 F.3d 377, 378 (6th Cir. 2001) ("A vocational expert's testimony concerning the availability of suitable work may constitute substantial evidence where the testimony is elicited in response to a hypothetical question that accurately sets forth the plaintiff's physical and mental impairments.").

### 3. Credibility/RFC

Plaintiff submits that the ALJ's credibility determination was based on an inaccurate analysis of the record, and thus was not supported by substantial evidence, as was the case in *Calhoun v. Comm'r of Soc. Sec.*, 338 F.Supp.2d 765

(E.D. Mich. 2004).  Plaintiff says that ALJ's analysis was inaccurate as she did not reference or analyze the medical records from June 2010.  Plaintiff posits that a change of onset date to the hospitalization date of June 30, 2010 would be acceptable, given that no records seem to exist prior to that date.  Second, if the ALJ found plaintiff to be "very credible" in his testimony about his symptoms, the ALJ should have realized that he was not only testifying about his symptoms on a "current" basis, but that he was describing his symptoms relating to the period preceding the expiration of his insured status.  Also, if the ALJ "assigned" "significant weight" to Ms. Ferland's opinion on his current impairments, there is no explanation by the ALJ as to why she would not have found Ms. Ferland's testimony to be credible relative to plaintiff's pre-DLI period of time.

The Commissioner contends that plaintiff fails to specify any additional functional limitations the ALJ should have included in the RFC assessment; and this failure alone should waive, or at the very least foreclose, his argument.  *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008) (the claimant bears the burden of demonstrating the need for a more restrictive RFC); *accord Turvey v. Comm'r of Soc. Sec.*, 2013 WL 3271194, at *5 (E.D. Mich. June 27, 2013) (affirming RFC assessment where "Plaintiff d[id] not specify any additional work-related functional limitations the ALJ should have, but did not, include in the RFC assessment").  As the Commissioner points out, the ALJ noted that there was very

31

limited medical evidence from the relevant period. (Tr. 18). And the June 2010 records do not document any functional limitations as a result of plaintiff's conditions. Therefore, as the ALJ explained, there is no medical evidence to verify the severity of plaintiff's subjective symptoms. *Id*. This is critical because "[s]ubjective claims of disabling pain must be supported by objective medical evidence in order to serve as the basis of a finding of disability." *McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Therefore, "objective medical evidence [must] confirm [] the severity of the alleged disabling pain arising from the condition or that the objectively established medical condition is of such a severity that it can reasonably be expected to produce disabling pain." *Wyatt v. Sec'y of Health & Hum. Servs.*, 974 F.2d 680, 686 (6th Cir. 1992). According to the Commissioner, plaintiff cannot carry that burden in this case because no matter how credible his testimony, there is simply no objective medical evidence to verify that his impairments were "of such a severity" to be considered disabling prior to his date last insured.

While plaintiff faults the ALJ for not expressly discussing the St. John's Hospital records from June 2010, the Commissioner points out that the ALJ is not required to discuss each piece of evidence in the record. *Bailey v. Comm'r of Soc. Sec.*, 413 Fed. Appx 853, 855 (6th Cir. 2011) (quoting 20 C.F.R. § 404.953) ("[The ALJ] is not required to analyze the relevance of each piece of evidence

individually.  Instead, the regulations state that the decision must contain only 'the findings of facts and the reasons for the decision.'").  According to the Commissioner, the hearing transcript and the ALJ's decision clearly demonstrate that the ALJ considered this evidence.  (Tr. 32) (ALJ expressly acknowledged St. John's Hospital records from 2010); (Tr. 14, 18) (ALJ acknowledged medical evidence from 2010).  What is more, even though those records confirm plaintiff's diagnoses, such as thrombocytopenia, the Commissioner says that they do not reflect any functional limitations as a result of plaintiff's impairments.  (Tr. 186–218).  Furthermore, the ALJ found that plaintiff had the severe impairments reflected in the St. John's records, including hepatitis C, chronic liver disease, alcohol abuse, and anemia.  (Compare Tr. 14 with Tr. 186).  Thus, the Commissioner maintains that plaintiff's assertion that the 2010 records "very clearly describe the significant medical condition that [plaintiff] suffers from, which were consistent with the testimony both he and his wife gave" wholly misses the mark.  The ALJ considered that testimony, and credited it.  (Tr. 17-18.) But the fact remains that plaintiff's subjective symptoms, no matter how credible, cannot support a finding of disability unless supported by objective medical evidence from the relevant period.  *See Wyatt*, 974 F.2d at 686.

The Commissioner also contends that plaintiff's argument again ignores the only medical opinion evidence in the record.  Specifically, the State agency

physician considered the medical evidence from the relevant period, including the

records from St. John's Hospital dated June 2010, and opined that plaintiff could

perform medium-level work with no further limitations.  (Tr. 66, 68).  Plaintiff

does not challenge the State agency physician's opinion.  Notably the ALJ's RFC

assessment was more favorable to plaintiff that the State agency opinion.  *Cf.*

*Morter v. Comm'r of Soc. Sec.*, 2016 WL 1055754, at *5 (W.D. Mich. Mar. 17,

2016) (noting harmless error where ALJ's RFC assessment was more restrictive

than doctor's opinion).  The ALJ limited plaintiff to only light work and further

limited plaintiff to no climbing ladders, no climbing stairs for ingress or egress to

the job location, and only moderate exposure to hazards.  (Tr. 17).  Therefore, in

light of the fact that the ALJ's RFC assessment was more limiting than the only

medical opinion evidence, and that plaintiff has failed to specify what additional

limitations the ALJ should have included in the RFC, the Commissioner maintains

that he has failed to show error with the ALJ's RFC assessment.

The ALJ did not err in her credibility determination.  Rather, the ALJ fully

supported her credibility determination, and there is no compelling reason to

disturb this determination.  "Credibility determinations concerning a claimant's

subjective complaints are peculiarly within the province of the ALJ.  *See Gooch v.*

*Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987).  "Upon

review, [the court must] accord to the ALJ's determinations of credibility great

weight and deference particularly since the ALJ has the opportunity, which [the court] d[oes] not, of observing a witness's demeanor while testifying." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003). Thus, an ALJ's credibility determination will not be disturbed "absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The ALJ is not required to accept the testimony of a claimant if it conflicts with medical reports, the claimant's prior statements, the claimant's daily activities, and other evidence in the record. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997). Rather, when a complaint of pain or other symptoms is at issue, after the ALJ finds a medical condition that could reasonably be expected to produce the claimant's alleged symptoms, he must consider "the entire case record, including the objective medical evidence, statements and other information provided by treating or examining physicians . . . and any other relevant evidence in the case record" to determine if the claimant's claims regarding the level of his pain are credible. SSR 96-7p, 1996 WL 374186, at *1; see also 20 C.F.R. § 416.929. "Consistency between the plaintiff's subjective complaints and the record evidence tends to support the credibility of the [plaintiff], while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 Fed. Appx. 852, 863 (6th Cir. 2011).

As the Commissioner points out, the ALJ here noted the absence of any documented medical treatment before plaintiff's alleged disability onset date and very few medical records before the DLI.  (Tr. 18).  Indeed, as noted above, the only pre-DLI medical records are from a single June 2010 hospitalization.  Here, the ALJ concluded that despite the credibility of plaintiff and his wife, there was no way, in this record, to ascertain when plaintiff's symptoms began, given the dearth of medical treatment before the DLI.  (Tr. 18).  Given this lack of treatment evidence, the ALJ only gave partial credibility to plaintiff's testimony regarding the date or time during which plaintiff's symptoms allegedly became disabling.  *Id*. The ALJ's analysis was reasonable and supported by substantial evidence in the record.  Indeed, lack of treatment for such a long period suggests plaintiff was less restricted, and in less subjective pain, than he alleges.  *Baker v. Colvin*, 2017 WL 3269390, *3 (W.D. Tenn. Aug. 1, 2017) (citing *Strong v. Soc. Sec. Admin*., 88 Fed. Appx. 841, 845 (6th Cir. 2004) ("Claimant simply failed to present any contemporaneous medical evidence of disability from the relevant time period."); *see also Friend v. Comm'r of Soc. Sec.*, 2014 WL 4908751, *8 (S.D. Ohio Sept. 30, 2014) ("The lack of any medical treatment casts considerable doubt on his claims that he was disabled during the relevant period.").  For these reasons the undersigned finds no basis to disturb the ALJ's credibility findings.

Likewise, the RFC is also supported by substantial evidence.  Plaintiff does not explain how, even if the ALJ "fully credited" plaintiff's testimony and his wife's testimony, that would have resulted in a more restrictive RFC.  Plaintiff identifies no specific additional functional limitations identified in the testimony.  Nor does plaintiff point to any medical evidence in the record supporting any claim for a more restrictive RFC or the imposition of additional functional limitations.  *See Green v. Comm'r of Soc. Sec.*, 2013 WL 5516046, at *7 (E.D. Mich. Oct. 4, 2013) ("Plaintiff has provided no evidence to suggest the existence of any functional limitations that the ALJ should have included.  Therefore, the ALJ did not err when she chose not to include any such limitations in Plaintiff's RFC.").

Finally, it appears that the crux of plaintiff's argument is that the existence of his conditions before the DLI should dictate a different result.  However, it is well-settled that the mere diagnosis of an impairment is not enough to show disability; a claimant must also prove its severity and functional impact.  *Foster v. Bowen*, 853 F.2d 483, 489 (6th Cir. 1988).  Mere diagnosis does not equate to a disability or any particular functional limitation.  *See e.g.*, *Jordan v. Colvin*, 2014 WL 5796713, at *5 (E.D. Ky. Nov. 6, 2014) ("[T]he mere fact that a claimant has been diagnosed with a variety of conditions does not equate automatically with any functional limitation.") (citing *Parley v. Sec'y of Health & Human Services*, 820 F.2d 777, 779 (6th Cir. 1987)); *see also Higgs v. Bowen*, 880 F.2d 860, 863 (6th

Cir. 1988) ("The mere diagnosis [of a disease] says nothing about the severity of the condition."); *Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) ("[D]isability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it.").  Again, plaintiff offers no evidence suggesting that he is more limited than as found by the ALJ.  Thus, the undersigned finds no error in the RFC.

4.     Vocational testimony

Plaintiff contends that the ALJ erred in her decision by stating that the vocational expert testified that plaintiff had "transferable skills … to light and unskilled" work, which included "hand packer, small product assembler and a visual inspector/checker."  The vocational expert testified, however, that there would be no direct transferable skills from this position.  (Tr. 57).  Plaintiff also says that the ALJ erred by not utilizing the Medical-Vocational Guidelines (the Grids), specifically as it relates to work capacity at the "light" exertional level, Rule 202.06, which describes a "high school graduate or more," where "prior work was skilled or semi-skilled, and skills are not transferable," and concludes that such an individual should be found "disabled."  The ALJ concluded that plaintiff's residual functional capacity was for light exertional work.  According to plaintiff, given Rule 202.06, plaintiff should have been found "disabled," pursuant to the aforementioned "grid" guidelines.

In response, the Commissioner points out that the ALJ found that plaintiff was capable of performing his past relevant work, which is supported by the testimony of the vocational expert. Thus, the ALJ found plaintiff not disabled at step four of the sequential evaluation, obviating the need for consideration of the Grids or plaintiff's ability to perform other work at step five. (Tr. 19). Thus, the Commissioner asserts that the ALJ's step-five findings were "alternative" findings, and any error at step five is irrelevant because the ALJ found plaintiff not disabled at step four of the sequential evaluation process. (Tr. 19); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 n.3 (6th Cir. 1997) ("We do not need to reach Step Five nor any of the arguments Walters has advanced concerning Step Five since the ALJ's conclusion at Step Four is supported by substantial evidence, rendering any such discussion inconsequential."). Because substantial evidence supports the ALJ's step-four finding that plaintiff was not disabled, the Commissioner urges the Court to reject plaintiff's step five argument and affirm her decision.

The undersigned agrees with the Commissioner. As explained above, there was no error at step four because the ALJ concluded that, based on the VE's testimony, that plaintiff could perform work as a school residence officer as that job was performed in the national economy. It is well settled that if the Commissioner determines that a claimant "can still do [his] past work ... [w]e will not consider [the claimant's] vocational factors of age, education, and work

39

experience." *Saeed Mousa v. Comm'r of Soc. Sec*., 2017 WL 191435, at \*5 (W.D.
Mich. Jan. 18, 2017) (quoting 20 C.F.R. § 1560(b)(3)).  "Thus, if the ALJ's step
four determination is supported by substantial evidence, any error in the ALJ's
alternative step five determination is harmless." *Id*.  Given that the ALJ's step four
evidence is supported by substantial evidence, the undersigned concludes that
error, if any, at step five is harmless and does not provide a basis for disturbing the
ALJ's decision.

## IV.    RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that
plaintiff's motion for summary judgment be **DENIED**, that defendant's motion for
summary judgment be **GRANTED**, and that the findings of the Commissioner be
**AFFIRMED**.

The parties to this action may object to and seek review of this Report and
Recommendation, but are required to file any objections within 14 days of service,
as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule
72.1(d).  Failure to file specific objections constitutes a waiver of any further right
of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and
Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some
issues but fail to raise others with specificity will not preserve all the objections a
party might have to this Report and Recommendation.  *Willis v. Sec'y of Health*

*and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date: July 31, 2018

s/Stephanie Dawkins Davis
Stephanie Dawkins Davis
United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on July 31, 2018, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to all counsel of record.

s/Tammy Hallwood
Case Manager
(810) 341-7850
tammy_hallwood@mied.uscourts.gov